Glenda T. LANDRY, Plaintiff-Appellant,

v.

AMOCO PRODUCTION COMPANY, Defendant-Appellee.

No. 77–1468.

United States Court of Appeals, Fifth Circuit.

May 24, 1979.

Robert McComiskey and Frank A. Silvestri, New Orleans, La., Kenneth E. Badon, Lake Charles, La., for plaintiff-appellant.

Edmund E. Woodley, Robert W. Fenet, Lake Charles, La., for defendant-appellee.

Before THORNBERRY, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This appeal presents the sole issue of whether the district court should have held plaintiff Glenda Landry to be a Jones Act seaman as a matter of law. Glenda Landry was employed as a roustabout by Amoco Production Company when she attempted to jump from one of Amoco's barges to another and, missing her target, plunged into the water and sustained injuries. Claiming she was a seaman under the Jones Act, 46 U.S.C.A. § 688,[1] she instituted this suit seeking damages from Amoco. The jury found against her.

On this appeal plaintiff contends that, viewing the evidence most favorably to defendant Amoco, reasonable and fair-minded people would be compelled to reach the conclusion that she was a Jones Act seaman. Accordingly, she argues, the district court erred when it denied her motion for a directed verdict on seaman status and her motion for judgment notwithstanding the verdict. Although the determination of a person's status as a seaman is ordinarily a mixed question of fact and law, the facts governing plaintiff's status as a seaman were established beyond cavil, and the district court erred in not deciding her status as a matter of law. We reverse.

At the close of the evidence plaintiff moved for a directed verdict on the issue of her status as a seaman under the Jones Act. Denying this motion the district court submitted the question to the jury. On special interrogatories the jury found that Glenda Landry was not a member of the crew of a vessel or vessels, Amoco was guilty of negligence which was a proximate cause of the injury to the plaintiff, damages totaled

1. The Jones Act, 46 U.S.C.A. § 688 provides: Any seaman who shall suffer personal injury in the course of his employment may, at his election; maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representa-tive of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

$98,000, and plaintiff was 50% contributorily negligent. Because the jury found Glenda Landry was not a member of the crew of a vessel or vessels, the court concluded that she was not a seaman and therefore could not recover under the Jones Act.

Expressing great difficulty in reaching his decision, the trial judge then denied Ms. Landry's motion for judgment notwithstanding the verdict. The memorandum decision noted that numerous juries in the Western District of Louisiana had found seaman status under circumstances in which the worker's contact with vessels was markedly less than Ms. Landry's, but the trial judge indicated he was unaware of any case in which a jury finding denying seaman status had been reversed by a district or appellate court. Without moving for a new trial plaintiff appealed the denial of her motion for directed verdict and, in the alternative, her motion for judgment notwithstanding the verdict.

Under the Jones Act "Any seaman who shall suffer a personal injury in the course of his employment" has the right to seek damages for injuries stemming from the negligence of his employer. 46 U.S.C.A. § 688. No definition of "seaman" is contained in the Act, and the spate of cases which have grappled with seaman status questions have consistently observed that there is no rigid set of circumstances governing such determinations. *See, e. g., Holland v. Allied Structural Steel Co., Inc.*, 539 F.2d 476 (5th Cir. 1976), *cert. denied*, 429 U.S. 1105, 97 S.Ct. 1136, 51 L.Ed.2d 557 (1977); *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir. 1969).

■ To establish seaman status a claimant must meet a threshold test of showing sufficient contact with waterborne or vessel-related activities. As articulated in *Holland v. Allied Structural Steel Co., Inc., supra* at 479, the claimant must prove that she or he was

> connected, in more than a transitory way, with a vessel or vessels, and that his [or her] injuries have arisen in the course of his [or her] duties in the service of such vessel or vessels.

While it is firmly established that the question of whether the claimant is a seaman is ordinarily resolved by the trier of fact, the trial court may, nonetheless, enter a directed verdict where the record demonstrates that reasonable persons could not draw conflicting inferences which might lead to a different conclusion. *Producers Drilling Co. v. Gray*, 361 F.2d 432, 437 (5th Cir. 1966); *Porche v. Gulf Mississippi Marine Corporation*, 390 F.Supp. 624, 630–631 (E.D. La.1975). *See Jenkins v. Aquatic Contractors & Engineers*, 446 F.2d 520, 521 (5th Cir. 1971). In *Producers Drilling Co., supra,* we affirmed a directed verdict in favor of plaintiff's claim of seaman status because there was "no room for conflicting inferences." The district court in *Porche* granted plaintiff's motion for directed verdict and found seaman status for the decedent since reasonable persons could not have found his activity to fall outside of the *Offshore Company v. Robison,* test. In *Jenkins, supra,* summary judgment was upheld by this Court because the only rational inference to be drawn from the evidence was that plaintiff was a Jones Act seaman.

■ The trial court mistakenly believed it could not grant plaintiff's motion for directed verdict or her motion for judgment notwithstanding the verdict. It is well established that where a trial judge's finding was colored by misapprehension of controlling legal principles, review of the evidence by this Court is free from constraints of the clearly erroneous rule. *See Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422, 433 (5th Cir. 1977), *rev'd on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).

■ Viewed most favorably to defendant, as they must be, the facts are as follows. In September 1974 Amoco Production Company hired Glenda Landry on probationary status as a roustabout. Ms. Landry was the first female in Amoco's western Lake Charles, Louisiana region to hold the position of roustabout. She had never held membership in a maritime union and did not possess seaman's papers while employed at Amoco.

As in the case of other roustabouts, plaintiff was not assigned to a particular barge but worked on different barges from time to time. Between her employment in September 1974 and her mishap in November 1974, plaintiff worked at the Hackberry gas injection site which could be reached by boat only.

Amoco's witnesses testified that a roustabout's work involved both land and water-related duties. The area foreman for the western half of the Lake Charles, Louisiana area estimated that the average roustabout in that region spent about 60% of his time working on land and 40% of his time working on water. Glenda Landry's gang foreman testified that a roustabout's work was divided fairly evenly between water and land with a slight emphasis toward work on water. Defense witness Alfred Connor, a roustabout, estimated that approximately 50% of his work was on water. He further testified that all roustabouts operated boats in connection with their work but were not assigned to a particular barge or boat. Another defense witness Charles Savoy, referring to the West Hackberry field and in part to the East Hackberry field, testified that 90% of his work as a roustabout for Amoco was on water. The district court found that work records prepared by Amoco indicated that plaintiff spent 70% of her time in vessel-related work activities. The work records showed, in addition, that plaintiff worked with essentially the same crew members, usually at the same site, up to the time of the accident.

On the day of the accident plaintiff was working at the West Hackberry Gas Injection Station No. 2 which was built on a levee in the marsh. Compression Station No. 2, part of the gas injection station and accessible only by boat, is situated on pilings driven into the earth, and there is a shell and earth island under and around the platform upon which a person can walk. The roustabouts were removing debris from a fire at the station, and plaintiff was working as a welder's helper on the barge as well as on the compression station. While attempting to jump from the "junk" barge to the "welding" barge, plaintiff fell into the water.

Despite this largely undisputed evidence, *Offshore Company v. Robison, supra* at 780, would require denial of a directed verdict if reasonable persons could draw conflicting inferences which might lead to a different conclusion. Under *Robison, supra* at 779

> there is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

In the instant case the district court found,

> The evidence here clearly reveals (1) that the vessels involved were in navigation; (2) that Ms. Landry performed a substantial part of her work on vessels, and (3) that her work aboard the vessels contributed to the function of the vessels.

\*     \*     \*     \*     \*     \*

Plaintiff was injured while jumping from the "junk barge" to the "welding barge," while the barges were secured to a land based gas injection station in the marsh near Hackberry, Louisiana. She fell into the water, suffered quite a trauma, and almost drowned.

Additionally the district court pointed out that although plaintiff was a probationary employee who worked some land jobs, performed miscellaneous tasks on a nonpermanent basis and was never assigned to any specific vessel, other juries in his district had found seaman status on markedly less evidence of contact with water-related activities. The trial court further noted the recent trend toward expanding the reach of seaman status. *See, e. g., Holland v. Allied Structural Steel Co., Inc., supra* at 479.

The denial of seaman status was based on the jury finding that plaintiff was not a member of the crew of a vessel or vessels. Our Court, however, has ruled that an employee may claim seaman status though stationed on several vessels during the course of his or her employment. *See Higginbotham v. Mobil Oil Corp., supra* at 432.

The proper legal standard coupled with undisputed facts showing plaintiff's substantial work relating to vessels in navigation makes clear that reasonable persons could not conclude that Ms. Landry was not a seaman.

The district court could have, and should have, entered a directed verdict or, in the alternative, granted plaintiff's motion for judgment notwithstanding the verdict on the issue of her status as a Jones Act seaman.

REVERSED AND REMANDED.