**Jimmy HINES, Plaintiff,**

v.

**SAYLOR MARINE CORPORATION, Defendant.**

No. Civ. A. 284–226.

United States District Court,
S.D. Georgia,
Brunswick Division.

July 8, 1985.

Edward Boshears, Brunswick, Ga., for plaintiff.

**34**

Wallace E. Harrell, Brunswick, Ga., for defendant.

### ORDER

ALAIMO, Chief Judge.

Plaintiff Jimmy Hines filed the instant action under the Jones Act, 46 U.S.C. § 688 (1982), to recover damages for personal injuries he received while working for Saylor Marine Corporation ("Saylor Marine"). Before this Court is defendant's motion for summary judgment based on the contention that plaintiff is not entitled to relief under the Jones Act because he was not a "seaman" during the relevant time. Having read and considered the parties' briefs in support of their respective positions, the Court is now prepared to rule on the summary judgment motion.

### FACTUAL BACKGROUND

The defendant is a marine construction company engaged primarily in the business of building and repairing docks, wharves, piers and similar maritime structures. As part of its regular operations, Saylor Marine employs barges as floating platforms for cranes and pile-driving equipment used at the work sites. Affidavit of Jimmy Hines, at 1. The defendant also operates the tugboats required to move the barges from one location to another. *Id.*

Jimmy Hines went to work for Saylor Marine as a laborer in 1979. From 1979 until 1982, he worked intermittently at various construction sites, performing whatever tasks his supervisor asked him to do. Affidavit of Jimmy Hines, at 1. Although Hines' specific duties varied from one job to another, their character primarily remained that of land-based construction work, notably building forms and doing related carpentry work associated with pouring concrete. Affidavit of Robert Myrick, at 2. Hines was never assigned permanently to any barge or vessel as a member of its crew, nor was he ever provided with meals or sleeping quarters aboard any barge or vessel. *Id.*

As a by-product of working for a marine construction company, Hines spent part of his time on and around barges secured at work sites adjacent to navigable waters. His job required him to carry materials on and off these vessels and occasionally to assist in moving the barges. In addition, Hines' supervisors sometimes asked him to perform chores aboard the barges, such as greasing and securing a crane or sweeping the deck. Affidavit of Jimmy Hines, at 2. Although incidental to his main duties as a laborer, these tasks were an outgrowth of the fact that Saylor Marine did most of its work at sites on or near water. Hines went to sea only once, and that was in 1982 when Saylor Marine moved one of its crane barges from Brunswick, Georgia, to a pier on St. Simons Island, Georgia. Affidavit of Jimmy Hines, at 3. It was on the St. Simons pier that Hines sustained the injury at issue in this suit.

On June 4, 1982, Hines was building a blockade on the St. Simons pier when he strained his back severely while trying to pick up a heavy timber. Deposition of Jimmy Hines, taken April 4, 1985, at 9. At the time of the injury, plaintiff was assigned to a carpentry crew as a laborer, a position he had held since January 1982 and continued to hold after his accident. Affidavit of Andy Andrews, at 1–2. Hines continued working for approximately six weeks following his injury, but finally had to quit his job because of back pain. Since his injury did not respond to conservative treatments with medication and injections, in August 1983, Hines was admitted to a Savannah hospital for back surgery. Deposition of Jimmy Hines, at 11–13. On June 1, 1984, Hines was released to return to work and secured employment as a woodcutter, a job he has since left.

On December 3, 1984, plaintiff filed this action, alleging that Saylor Marine was negligent in failing to provide a reasonably safe working environment, failing to maintain safe and adequate equipment, failing to warn plaintiff of dangers at his workplace and failing to exercise the proper degree of care for Hines' safety. Plaintiff's Complaint, at 2. Defendant answered by denying admiralty jurisdiction, denying

plaintiff was a "seaman" within the meaning of the Jones Act, asserting that the claim was barred by laches or the statute of limitations and asserting that Hines failed to exercise ordinary care for his own safety. Defendant's Answer, at 1–2. Saylor Marine has now filed a motion for summary judgment under Fed.R.Civ.P. 56 on the question of whether plaintiff is a "seaman" within the purview of the Jones Act. In reply, Hines asserts that he is a seaman and that his status as such under the Act is a question of fact best left to the wisdom of a jury.

## DISCUSSION

The Jones Act provides, in pertinent part:
Any *seaman* who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C. § 688 (1982) (emphasis added).

■ The requirement that a Jones Act claimant be a "seaman" in order to recover benefits under the section is jurisdictional. *See Bernard v. Binnings Construction Co.*, 741 F.2d 824 (5th Cir.1984). Only one so situated can show the "maritime nexus" necessary to invoke the admiralty jurisdiction of the federal courts. *See Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). The party seeking recovery under the Jones Act bears the burden of proving that he was a "seaman" within the meaning of the statute at the time of his injury. *Bernard, supra*, at 827; *Billings v. Chevron, U.S.A., Inc.*, 618 F.2d 1108, 1109 (5th Cir.1980).

Although the Jones Act itself does not define "seaman," the term is used interchangeably throughout the case law with the phrase "member of the crew." *See, e.g., Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir.1980); *Noble Drilling Corp. v. Smith*, 412 F.2d 952 (5th Cir.1969); *Boatel, Inc. v. Delamore*, 379 F.2d 850 (5th Cir.1967). Titles and job descriptions are not determinative, however, and courts have repeatedly held that seaman status ordinarily presents a question of fact for the jury. *See Gianfala v. Texas Co.*, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955) (per curiam); *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380 (5th Cir.1985); *Fredieu v. Rowan Companies, Inc.*, 738 F.2d 651 (5th Cir.1984); *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832 (5th Cir.1982).

■ Since seaman status is a fact-sensitive issue, "summary judgment in Jones Act cases is rarely appropriate." *Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307, 309 (5th Cir.1984). *See also Prinzi v. Keydril Co.*, 738 F.2d 707 (5th Cir.1984); *Bouvier v. Krenz*, 702 F.2d 89 (5th Cir.1983); *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240 (5th Cir.1983). Indeed, the Fifth Circuit Court of Appeals has held that the riddle of seaman status should be submitted to the jury even in marginal cases. *Bertrand, supra*, at 244; *Leonard v. Exxon Corp.*, 581 F.2d 522 (5th Cir.1978); *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir.1972).

In some cases, however, a court may conclude that no evidentiary basis exists to support a finding that an injured employee is a Jones Act seaman. *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277 (5th Cir. 1981); *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447 (5th Cir.1980); *Landry v. Amoco Production Co.*, 595 F.2d 1070 (5th Cir.1979). "Where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about these facts," summary judgment or a directed verdict is appropriate. *Bertrand, supra*, at 244; *Abshire, supra*, at 835; *Guidry, supra*, at 454; *Landry, supra*, at 1072; *Stanley v. Guy*

*Scroggins Construction Co.,* 297 F.2d 374, 376 (5th Cir.1961).

Since the underlying facts are undisputed in the present case, the Court will review them to determine if they give rise to conflicting inferences about whether plaintiff was a Jones Act seaman.

In *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959), the Fifth Circuit established a two-prong test for analyzing whether a Jones Act claimant met the threshold requirement of being a seaman. The factors to be considered include:

(1) [whether] there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) [whether] the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Id.* at 779.

For more than 25 years, courts presiding over Jones Act cases have followed the *Robison* test for seaman status, and a substantial body of law has emerged. It is now clear that, to meet the permanency or substantiality prong of the *Robison* test, a claimant must show he performed a significant part of his work aboard ship with some degree of regularity and continuity. *Keener v. Transworld Drilling Co.,* 468 F.2d 729 (5th Cir.1972). The Fifth Circuit has further held that "[t]he issue of an injured worker's status as a seaman should be addressed with reference to the nature and location of his occupation taken as a whole." *Longmire v. Sea Drilling Corp.,* 610 F.2d at 1347. The courts also have emphasized "[t]he relationship creating seaman status must be substantial in point of time and work, not merely sporadic." *See Bertrand v. International Mooring &*

*Marine, Inc., supra,* at 246; *Dove v. Belcher Oil Co.,* 686 F.2d 329, 333 (5th Cir.1982).

■ Although the underlying facts in this case are not disputed, the inferences to be drawn from those facts are hotly disputed. Saylor Marine contends that Hines' job description, when viewed in conjunction with his actual duties, reveals beyond a shadow of a doubt that plaintiff was nothing more than a land-based construction worker. Hines, on the other hand, argues that his work required far more contact with barges and the attendant perils of the sea than his job description indicates. Stressing the maritime nature of his employment, Hines further asserts he often performed traditional seaman's duties, even while assigned to the carpentry crew. Plaintiff points out that he cleaned up the barges, tightened and hooked up ropes, maintained equipment located on the barges and sometimes assisted in moving the barges. Saylor Marine responds that such tasks were incidental to Hines' primary duties and were too sporadic and fortuitous to vest plaintiff with seaman status.

In support of their respective positions, both parties cite numerous cases that are factually similar to the present one. Each side argues that its cases should control. Unfortunately, close scrutiny of this contradictory mass of case law only highlights the difficulty judges have encountered in deciding who qualifies as a Jones Act seaman. While the Court is of the opinion that Hines was more a laborer than a seaman, it is evident from the briefs and affidavits that conflicting inferences can be drawn about the nature of Hines' work at Saylor Marine. The amount of time plaintiff spent working on the barges and the duties he performed there undoubtedly will have great bearing on the proper resolution of this question. Such factual matters, however, are better addressed at trial than at the pleadings stage of the proceedings.

**CONCLUSION**

In light of the conflicting inferences that can be drawn from the underlying facts here, this Court cannot rule as a matter of

law that plaintiff was not a seaman at the time of his injury. Since even marginal Jones Act cases should be submitted to a jury, defendant's motion for summary judgment is hereby DENIED.