JONES, Circuit Judge,
dissenting.
I concur in all of this good opinion except the decision affirming Naquin’s status as a seaman. On this issue, I respectfully disagree.
I. Seaman Status Elements
To be a seaman, Naquin must satisfy the two-prong test established in Chandris v. Latsis: (1) his duties must contribute to the function of the vessel or to the accomplishment of its mission; and (2) he must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature. Chandris v. Latsis, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). I agree with the majority that Naquin passes the first prong of the Chan-dris test. In my view, however, Naquin does not satisfy the duration or nature components of Chandris’s second prong. Indeed, if a jury could hold Naquin is a seaman, then it could so conclude as to any shore-based worker who maintained EBI’s on-board computers or went aboard the lift-boats to gas them up before they left the repair yard. Chandris and Sw. Marine, Inc. v. Gizoni, 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991), broadly commit these cases to the jury, but they do not prevent courts from ever distinguishing seamen from harbor workers as a matter of law.
II. Duration Component
As a general rule, the duration component of Chandris’s second prong is satis *942 fied when an employee spends 30 percent or more of his time in service of a “vessel in navigation.” Chandris, 515 U.S. at 371, 115 S.Ct. 2172. (The Supreme Court adopted this circuit’s opinion in Barrett v. Chevron, U.S.A., 781 F.2d 1067 (5th Cir.1986) (en banc) on this rule of thumb.) But the Court noted,
This figure [30%] serves as no more than a guideline ... and departure from it will certainly be justified in appropriate cases.... And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury....
Chandris, 515 U.S. at 371, 115 S.Ct. 2172.
The sole issue here is whether Naquin’s work as a repair supervisor on vessels docked in a canal or in drydock counts as service of a vessel in navigation. Naquin spent 70 percent of his time employed in this capacity.[1] In denying EBI’s motion for summary judgment, the district court took a statement from Chandris out of context to reach a conclusion that runs contrary to the “fundamental distinction” that Chandris recognized between land-based and sea-based maritime workers. Cf. id. at 358, 115 S.Ct. 2172. According to the district court, Naquin’s land-based repair time was connected to a vessel in navigation because, as Chandris noted, a vessel remains in navigation even when it is temporarily moored or docked for repairs. Naquin v. Elevating Boats, LLC, 842 F.Supp.2d 1008, 1017 (E.D.La.2012) (citing Chandris, 515 U.S. at 373-74, 115 S.Ct. 2172). The majority concludes without further discussion that Naquin’s time repairing the lift-boat cranes satisfies the duration component.
In my view, this conclusion is irreconcilable with Chandris’s “basic point,” which is that land-based employees like Naquin are not seamen. Chandris, 515 U.S. at 370, 115 S.Ct. 2172 (“The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them [to maritime peril]”.... [T]he ultimate inquiry is whether the worker in question is a member of the vessel’s crew or simply a land-based “employee.”) (emphasis added); see also Heise v. Fishing Co. of Alaska, 79 F.3d 903, 906 (9th Cir.1996) (holding that a land-based repairman assigned to perform routine, off-season maintenance on a fishing vessel did not satisfy Chandris’s first prong where the “first basic principle” behind Chandris’s definition of seaman is that the term does “not include land-based workers”). Moreover, the passage in Chandris regarding temporarily moored or docked vessels is inapplicable to the present facts. Unlike the plaintiff in Chandris, Naquin did not sail on a ship that was temporarily docked. He worked almost exclusively on vessels that were moored, jacked up, or docked in the shipyard undergoing repair, and found himself on a navigable vessel only on rare occasions.[2] To allow Naquin to accrue the 30 percent minimum temporal connection while solely working on docked vessels under repair essentially removes the duration component for other land-based repairmen who are fortunate enough to work on vessels that do not require long-term repairs. According to the majority, these repairmen could always claim that they spent their time working on vessels “in navigation” despite the fact they do all of *943 their work on or tied to land, safely removed from maritime dangers. To me, this outcome defies logic and disregards the overarching purpose of the Jones Act as stated in Chandris.
III. Nature Component
I also disagree with the majority’s analysis of the nature component of Chandris’s second prong. The majority characterizes the facts that support the conclusion that Naquin spent all of his time dockside as a “categorical assertion” that does not demonstrate that Naquin was protected from maritime perils. But in the next sentence, the majority categorically asserts that near-shore workers “still remain exposed to the perils of the sea,” citing no facts showing that Naquin, who spent nearly all of his time on boats moored to a dock, faced any maritime perils in the ordinary course of his duties. This “moving right along” approach to the particulars of Naquin’s employment runs contrary to the fact-specific inquiry that the Supreme Court has recommended for determining seaman status. See, e.g., McDermott Int’l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) (holding that Jones Act status turns on the employee’s “precise relation” to the vessel).
The majority then references several cases to support Naquin’s claim to seaman’s status, but they have no bearing on what circumstances, if any, entitle a dockside worker like Naquin to Jones Act coverage. The sole issue in Stewart v. Dutra Constr. Co. was whether the dredge was a vessel for the purposes of the Jones Act. The court did not address whether the harbor-bound worker, much less the land-based repair supervisor suing in our case, faced maritime peril. Stewart v. Dutra Const. Co., 543 U.S. 481, 485, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005). Similarly, the dispositive factor in Grab v. Boh Bros. Constr. Co., L.L.C., was not that the workers operated near the shore but that their work exposed them to sea-related dangers. The plaintiffs travelled daily to their work-site by crewboat and helped navigate a barge, which routinely had to be moved along the length of the Lake Ponchartrain bridge. Grab v. Boh Bros. Constr. Co., L.L.C, 506 Fed.Appx. 271, 274, 276 (5th Cir.2013). Naquin’s shore-side duties exposed him to no such maritime perils.
In my view, the majority also misapplies Endeavor Marine. In that case, the district court held that plaintiff was not a seaman under Harbor Tug and Barge Co. v. Papai because his job did not literally “take him to sea.” In re Endeavor Marine Inc., 234 F.3d 287, 289 (5th Cir.2000) (per curiam). We reversed, holding that the “going to sea” requirement is satisfied whenever the employee’s connection to the vessel regularly exposes him to maritime perils. Id. at 291. Further, we ruled that the plaintiff faced such perils. Id. at 292. The contrast between the work performed by the Endeavor Marine plaintiff and Na-quin, however, seems clear. The Endeav- or Marine plaintiff was a derrick barge crane operator who loaded and unloaded cargo vessels in the Mississippi River (not a canal). Id. at 288. His job required him to travel over water to his worksite and exposed him to the uniquely maritime dangers that arose when his barge was moored to the cargo vessels that he was assigned to load or unload. Id. at 289. He was injured, moreover, when struck by a mooring cable as he was handling the lines while waiting for his barge to be positioned alongside the cargo vessel. Id. Naquin, on the other hand, spent nearly all of his time dockside, repairing boats that were secured in the shipyard canal, or operating a land-based crane, or working in the shipyard fabrication shop. His em *944 ployment, in sum, was substantially similar to that of other land-based employees whose seaman status has been denied by federal and state courts.[3]
Finally, the majority refers to our “brown water” cases to show that employees who work on quiet waterways may recover under the Jones Act. All of these cases, however, involve employees who performed their work while their vessel was operating on water.[4] Thus, they offer no help to Naquin, who worked nearly always in the shipyard.
IV. Conclusion
With all respect to the majority, I would hold that Naquin is not entitled to seaman status and, therefore, reverse the district court’s ruling that EBI was liable under the Jones Act.

. The rest of Naquin’s hours were not connected with a vessel in navigation. He divided nearly all of his remaining time between the fabrication shop and operating a land-based crane in the shipyard.

. Naquin testified that he was aboard on a moving vessel less than one percent of his time at work.

. See, e.g., Clark v. Am. Marine & Salvage, LLC, 494 Fed.Appx. 32 (11th Cir.2012) (unpublished) (affirming dismissal of Jones Act claim brought by crane operator who performed most of his repairs on land); Schultz v. Louisiana Dock Co. 94 F.Supp.2d 746 (E.D.La.2000) (ruling that repairman who inspected and repaired moored barges was not a seaman); Richard v. Mike Hooks, Inc., 799 So.2d 462 (La.2001) (reversing lower courts and dismissing land-based repairman’s Jones Act claim).

. See Producers Drilling Co. v. Gray, 361 F.2d 432 (5th Cir.1966) (affirming seaman status where employee worked on barge that traveled through navigable waters); Colomb v. Texaco, Inc., 736 F.2d 218 (5th Cir.1984) (holding that oilfield worker assigned to inland, submersible barge was a seaman); Landry v. Amoco Production Co., 595 F.2d 1070 (5th Cir.1979) (providing that worker employed as roustabout aboard barges on inland waters is a seaman); Boh Bros. Const. Co., LLC, supra (ruling that employees who worked aboard a crane barge on Lake Pon-chartrain were seamen).